**The document below is hereby signed.**

**Dated: July 18, 2011.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
            UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF COLUMBIA
```

In re                           )
                                )
RANDOLPH TOWERS COOPERATIVE,    )   Case No. 11-00238
INC.,                           )   (Chapter 11)
                                )
          Debtor.               )

MEMORANDUM DECISION RE DEBTOR'S
MOTION FOR SANCTIONS AGAINST WACHOVIA BANK, N.A.

This addresses the Debtor In Possession's Motion for Sanctions directed against Wachovia Bank, N.A.[1]

I

The debtor, Randolph Towers Cooperative, Inc., filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (11 U.S.C.) on March 29, 2011. The debtor is operating its business and managing its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. As a debtor in possession, the debtor has all of the rights and powers of a trustee, and all of a trustee's duties that are of relevance

---

[1] Wells Fargo Bank, N.A., has become the successor by merger to Wachovia, but for ease of discussion I will treat Wachovia as the entity against whom sanctions are sought.

here.  11 U.S.C. § 1107.  On March 31, 2011, Wachovia sent to the debtor's counsel a letter stating in pertinent part:

> .... WACHOVIA is required by operation of Section 542 of the Bankruptcy Code to act in good faith to prevent the payment of prepetition debts from a non-Debtor in Possession account.
> As such, WACHOVIA has placed a debit restraint on any open deposit account(s) held by your client that was opened prior to the filing of case 11-00238.  The restraint(s) will remain on your client's account(s) until WACHOVIA is provided a court order which allows your client continued use of the specific deposit account(s).  If your client does not have such an order, WACHOVIA will issue a Cashier's Check payable to your client as Debtor in Possession or transfer funds to Debtor in Possession accounts opened with WACHOVIA.

Wachovia has refused to lift this "debit restraint." Characterizing the debit restraint as an act to exercise control over property of the estate in violation of the automatic stay of 11 U.S.C. § 362(a)(3), the debtor seeks sanctions.  Section 362(a)(3) bars "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

                                II

The debtor's motion must be denied, first, because at most Wachovia has failed to perform a contract.  If a party to a contract with a debtor refuses to perform the contract because the debtor is in bankruptcy, that may be a breach of contract but it is not an exercise of control over property of the estate. The contract remains intact.

In *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995),

2

the Court addressed whether a bank's freezing of a bank account to protect its right of setoff (until the impact of the bankruptcy case on that right could be adjudicated by the bankruptcy court) violated § 362(a)(3). The Court held that:

> a bank account . . . consists of nothing more or less than a promise to pay, from the bank to the depositor; and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Strumpf*, 516 U.S. at 21 (citations omitted). Accordingly, Wachovia's refusal to pay checks presented on the accounts is possibly a breach of contract, but it is not a violation of the automatic stay.

Contrary to *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 432 B.R. 812, 820 (B.A.P. 9th Cir. 2010), I conclude that § 362(a)(3) is not violated whether a bank's refusal to honor checks drawn on an account is characterized as temporary or permanent, and whether the refusal is done to protect the bank's asserted right of setoff or for some other reason. There simply is no logical way to treat the rationale of *Strumpf* as limited to temporary restraints on the utilization of a bank account, or as limited to protection of the right of setoff. As in *Strumpf*, the debtor's assertion of a violation of § 362(a)(3) "rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent." *Strumpf*, 516 U.S. at 21. The

3

premise is false whether the debit restraint is temporary or permanent, and whether the debit restraint was to preserve a right of setoff or for some other reason.

As to the duration of the debit restraint, there is simply no logical way that a restraint somehow becomes something more than a refusal to pay (and transformed into an exercise of control over property of the estate) based on how long the restraint lasts. Whether it is temporary or indefinite, the debit restraint logically is "neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise" under *Strumpf*, 516 U.S. at 521. If a temporary restraint of one month is not a violation of the automatic stay, neither is a temporary restraint of one century. Nor should a restraint of indefinite duration be a violation of the automatic stay.

As to the reason for the debit restraint, a bank can refuse to pay checks drawn on the account for even an arbitrary reason (for example, because it has taken a disliking to the debtor's management), and that would not constitute a violation of the automatic stay. Here, it placed a debit restraint on the accounts because the debtor filed a bankruptcy case and the bank is worried that it needs to place a debit restraint on the accounts to protect itself from claims if the accounts are improperly used to pay prepetition debts. Whether such

motivation for its conduct is rational or irrational, Wachovia's conduct did not violate the automatic stay.

Wachovia attempts to articulate reasons why it put the deposit restraint in place. Prepetition debts in a bankruptcy case generally may not be paid without an order of the bankruptcy court. Wachovia contends that the debit restraint only prevents prepetition debts of the Debtor from being paid from bank accounts that are property of the bankruptcy estate, citing *Wells Fargo v. Jimenez*, 406 B.R. 935, 941 (D.N.M. 2008); and *In re Young*, 439 B.R. 211 (Bankr. M.D. Fla. 2010). Wachovia further contends that this court's Consent Order Conditioning Rights of Debtor(s) in Possession (Dkt. No. 36) required that the debtor comply with the Chapter ll Guidelines of the United States Trustee, which specifically require that "[y]ou have 15 days from petition date to close out old accounts, open new 'debtor in possession' accounts, and file your depository report."

In response to these contentions, the debtor characterizes Wachovia as an officious intermeddler who has no reason to take it upon itself to guard against misuse of the debtor's accounts, and notes that the United States Trustee has not objected to the debtor's having continued to retain the Wachovia accounts without closing them and depositing the funds into new debtor in possession accounts. The debtor explains that a debit restraint might make sense in a chapter 7 case, because a debtor might

deplete the account before it could be reached by the trustee, but contends that a debit restraint makes no sense in a chapter 11 case in which, as noted in *CFTC v. Weintraub*, 471 U.S. 343, 355 (1985), a debtor in possession carries out the fiduciary responsibilities of a trustee.  *See In re Young*, 439 B.R. 211, 218-19 (suggesting in *dicta* that the propriety of a debit restraint in a chapter 11 or 13 case might be different from a debit restraint in a chapter 7 case).  In order to demonstrate that the automatic stay does not apply, however, Wachovia does not need to show that there is a justification for its placing a debit restraint on the accounts.  Even if there were no sound reason for its conduct, its refusal to pay debits against the accounts is not a violation of the automatic stay.[2]

 Nor did Wachovia's placing a debit restraint on the accounts based on the debtor's having filed a bankruptcy case violate 11 U.S.C. § 525, the provision setting forth protections against discriminatory treatment of a debtor who has filed a bankruptcy case.  Nor is Wachovia a utility barred by 11 U.S.C. § 366(a) from refusing to provide services on the basis of the debtor having filed a bankruptcy case.  Congress has not seen fit to

---

[2] Wachovia could decide as a prophylactic matter that it should install a debit restraint regardless of which chapter the case is pending in.  After all, a trustee might be appointed in a chapter 11 case, and, moreover, a case under chapter 11 can be converted to a case under chapter 7.  Wachovia's conduct may have caused inconvenience for this debtor, but it is not a violation of the automatic stay.

6

prohibit the placing of a debit restraint on a debtor's bank account based on the debtor's filing of a bankruptcy case, either in § 362(a)(3) or elsewhere in the Bankruptcy Code.

### III

*Mwangi* justified its conclusion that a debit restraint violates the automatic stay by reasoning that when (as here) a bank lacks a right of setoff, the failure to pay over the account violates 11 U.S.C. § 542(b). Under 11 U.S.C. § 542(b):

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

I must respectfully disagree with *Mwangi* that a violation of § 542(b) can serve as a basis for a finding of contempt.

### A

Even if Wachovia's debit restraint could somehow be characterized as a failure and refusal to pay the bank accounts to the debtor in possession, thereby violating § 542(b), its debit restraint would still not constitute an exercise of control over property of the estate: the debtor in possession would still retain its contractual rights. Instead, under the rationale of *Strumpf*, such conduct would simply be a refusal by Wachovia to perform its contractual obligation to make payment. *See Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 603

7

(Bankr. S.D. Tex. 2005). As explained in part C, below, the "turnover" requirement of § 542(b) is not an order of the court, and cannot form the basis for a finding of contempt, but I first take a brief detour to explain why 11 U.S.C. § 542(a), a companion "turnover" provision, does not control.

B

Section 542(a) does not govern "turnover" of a bank account as it is not the specific provision dealing with "turnover" (*i.e.*, performance of the contractual obligation of paying the bank account). See *Calvin*, 329 B.R. at 596. Section 542(b) applies because the debtor's bank accounts were payable on demand, and thus governs "turnover" of the bank account. In contrast, § 542(a), governs turnover of tangible personal property by providing:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Even disregarding the fact that § 542(b) is the provision specifically applicable to bank accounts, § 542(a) has no applicability to a debtor's bank account (which, under *Strumpf*, is nothing more than a contractual right to payment) because the right to payment that rested in the debtor became property of the

8

estate that was automatically in the possession of the trustee (or, here, the debtor in possession). The idea of a bank somehow having an obligation under § 542(a) physically to turn over to the trustee the estate's intangible contractual right (that automatically was in the trustee's possession when the case commenced) is an absurdity. Instead, the requirement of making payment to the trustee in accordance with the contractual right to payment is controlled by § 542(b).

In any event, even if § 542(a) applied, the bank's failure to make payment would not alter the estate's contractual right to payment. Under the rationale of *Strumpf*, the failure to pay would not constitute an exercise of control over property of the estate. Moreover, § 542(a), like § 542(b), does not purport to act as an order of the court such as to provide a basis for a finding of contempt.

C

Unlike § 362(a), which provides that the petition "operates as a stay," § 542(b) is a statutory command that does not purport to operate as an order of the court. In that sense, § 542(b) is not self-executing, and a refusal to honor a trustee's demand for turnover pursuant to § 542(b) cannot give rise to a finding of contempt. The statute is self-operative only in the sense of vesting in the trustee (in lieu of the debtor), without the necessity of a court order, the right to receive payments of

obligations that are otherwise payable on demand.

There are good reasons why Congress would have elected not to make § 542(b) a provision whose violation would give rise to a finding of contempt. Although an account obligation may be payable on demand, the account obligor may dispute the existence of the obligation. Moreover, an account obligor may have other debts to pay of a pressing nature, yet if a violation of § 542(b) is treated as a court order, only the obligation to pay the bankruptcy trustee would be enforceable via contempt sanctions.

A trustee's remedy when an account obligor fails to comply with 11 U.S.C. § 542(b) is to sue to enforce that provision. If the account obligor proceeds to defend in bad faith, the trustee may be entitled to recover attorney's fees in accordance with an exception to the American rule or pursuant to Fed. R. Bankr. P. 9011. If, however, the account debtor does not defend or defends on plausible grounds, attorney's fees ought not be recoverable. Yet, under the *Mwangi* view of the statute, if the account obligor fails to make payment to the trustee, it risks being held in contempt even if it had plausible grounds for defending against the assertion that an obligation to pay on demand existed or decided to pay other pressing obligations it owed.

Congress could not have intended to make contempt a weapon added to the trustee's arsenal to make it easier to collect accounts payable. It would not have wanted to subject an account

obligor to the risk that, if its arguments that the account obligation was not payable are rejected, it might be held in contempt. That would deter the assertion of plausible grounds for non-payment that might be upheld (or at least pass muster under Rule 9011) if asserted. Nor would Congress have wanted a trustee to have a contempt weapon available to only the trustee, giving the trustee a preference over other entities to whom the account obligor is indebted and who do not enjoy contempt as a collection tool.

Nor ought a refusal to comply with § 542(b) constitute a violation of § 362(a)(3). The failure to pay remains just that, and, under the rationale of *Strumpf*, not an exercise of control over property of the estate.

I have explored the § 542(b) issue in prior decisions. As noted in *In re Bernstein*, 252 B.R. 846, 849 (Bankr. D.D.C. 2000):

> Section 542(b) is simply an acknowledgment that the trustee, not the debtor, is entitled to receive payment of monetary obligations owed to the debtor, not a self-executing provision giving rise to contempt when the obligor fails to pay the obligation to the trustee. *See Inslaw*, 932 F.2d at 1472 [citing *United States v. Inslaw*, 932 F.2d 1467, 1472 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992)]  (§ 362(a)(3) does not apply "[w]henever a party against whom the bankrupt holds a cause of action (or other intangible property right) acted in accord with his view of the dispute rather than that of the debtor-in-possession or bankruptcy trustee"); *In re Williams*, 249 B.R. 222 (Bankr. D.D.C. 2000); *In re Mountaineer Coal Co., Inc.*, 247 B.R. 633, 644 (Bankr. W.D. Va. 2000). Both § 542(a) and § 542(b) should be viewed as vesting a right in the trustee, but not a right that is self-executing. Under both provisions, when the entity obligated to perform fails to perform, the

>   trustee's remedy is to obtain a court order, not contempt. The purpose of § 542(a) [and of § 542(b)], therefore, "is to empower the trustee in bankruptcy to get hold of the property of the debtor, some of which will be in the possession, custody, or control of third parties." *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. ( In re USA Diversified Products, Inc.)*, 100 F.3d 53, 56 (7th Cir.1996) (Posner, J.).

As sated in *Williams*, 249 B.R. at 223:

>   Section 542(b) simply makes clear that [an account obligor] is obligated to render performance to the trustee; § 542(b) does not suddenly transform the rights of performance on a contract into a right to hold the non-performing non-debtor in contempt simply by reason of the intervention of bankruptcy.

When a failure to pay arises because the account obligor uses its available funds to pay other entities to which it is indebted or because it disputes (rationally or irrationally) the obligation to make payment, its conduct does not constitute contempt.  Nor does contempt arise when, as here, a bank places a debit restraint on the account because of a perception (rational or not) that such a debit restraint is required by bankruptcy law.

For all of these reasons, I respectfully disagree with the conclusion of *Mwangi* that a violation of § 542(b) gives rise to contempt.  Wachovia's conduct, if a failure to comply with § 542(b), does not constitute contempt.

                                IV

In any event, Wachovia has not refused to comply with § 542(b).  Its letter made clear that on request of the debtor in possession it would send the debtor in possession a certified

check for the amount of the account.

Even if, despite *Strumpf*, the moneys in a bank account could be deemed property of the estate, Wachovia has stood ready to turn the moneys over to the debtor in possession via a certified check.  There is no way in which its conduct could be deemed an act to exercise control over the property of the estate.

V

An order follows denying the motion for sanctions.

[Signed and dated above.]


Copies to: Recipients of e-notification (including Craig B. Young, Esq. (counsel for Wachovia) and Janet M. Nesse, Esq. (counsel for debtor)).